IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| STATE FARM FIRE AND CASUALTY COMPANY, | |
|---|---|
| *Plaintiff,* | CIVIL ACTION NO. 17-01224 |
| v. | |
| DTL MECHANICAL, LLC, SCOTT EVANS and MARIA EVANS, | |
| *Defendants.* | |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**March 30, 2018**

## MEMORANDUM

State Farm Fire and Casualty Company insured DTL Mechanical, LLC under a business owners policy. (Pl.'s Mot. & Mem. for Summ. J., ¶ 1, ECF No. 14.) DTL was subcontracted to install a heating, ventilation and air conditioning ("HVAC") system in an addition to the home of Scott and Maria Evans. (*Id.*, Ex. C ("Joinder Complaint") at ¶ 11, ECF No. 14-5.) There were numerous problems with the addition, including the HVAC installation. (*Id.*, Ex. B ("Complaint"), ECF No. 14-4.) The Evanses sued the contractors in state court, and the contractors in turn sued DTL (the "underlying litigation"). (Joinder Complaint at ¶¶ 2, 7, 12.) State Farm declined to defend or indemnify DTL in the underlying litigation, and the Evanses eventually settled with the contractors and DTL. (Mot. at ¶ 13.) As part of that settlement agreement, DTL assigned to the Evanses its right to pursue certain claims against State Farm. (Defs.' Resp., Ex. A ("Assignment"), ECF No. 5.)

State Farm seeks a declaration that it did not owe DTL a duty to defend or indemnify it in the underlying litigation, and thus has no obligation to indemnify the

1

Evanses under the Assignment.[1]  (Compl., ECF No. 1.)  The Evanses responded by asserting thirteen counterclaims.  (Resp. at 12-28.)  State Farm filed a Motion for Summary Judgment (Mot. at 1), which the Court grants for the reasons that follow.

I

The Evanses hired Bianco Contractors, Inc. and Jeffrey Biancaniello ("the contractors") in mid-2014 to construct an addition onto their home.  (Complaint at ¶ 5.)  During the course of the construction, the contractors hired DTL as a subcontractor to install an HVAC system.  (Joinder Complaint at ¶ 11.)  A number of problems arose after the addition was completed, forcing the Evanses to reconstruct or replace portions of the addition.  (Complaint at ¶ 9.)  As a result, the Evanses sued the contractors in the Delaware County Court of Common Pleas.  (*Id.* at ¶¶ 11, 20, 22, 24, 29.)  Relevant to the present Motion, the Evanses alleged that the contractors installed an improperly "designed, sized, vented and harmonized HVAC system," failed to comply with applicable building codes, and breached implied warranties that the HVAC system would comply with industry standards and fit for ordinary purposes.  (*Id.* at ¶¶ 20, 32.)  The contractors, in turn, alleged that DTL was "responsible for the installation of the HVAC system," and that damages sustained by the Evanses were caused by DTL's "negligent performance of the work."  (Joinder Complaint at ¶¶ 2, 7, 12.)

DTL had a Business Owners Policy with State Farm, the term of which ran from September 1, 2014 through September 1, 2015 ("the Policy").  (Mot. at ¶ 1; Resp. at ¶ 1.)  The Policy provided that State Farm would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or

---

[1]     The Court dismissed DTL pursuant to F.R.C.P. 41(a)(2).  (ECF No. 12.)

'personal and advertising injury'" caused by an "occurrence." (*Id.*, Ex. A ("Policy") at 23, ECF No. 14-3.) "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property." (*Id.* at 36.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

State Farm declined to defend or indemnify DTL, maintaining that the allegedly negligent installation work did not constitute an "occurrence" under the Policy. (Mot. at ¶ 13; Resp. at ¶ 13.) The Evanses subsequently settled the underlying litigation against the contractors and DTL. As part of that settlement, DTL assigned the Evanses its rights to pursue "any and all insurance defense and/or indemnification declaratory judgment claims, as well as any and all bad faith claims that may apply or arise as a result of the failure and/or refusal by State Farm…to indemnify and/or defend DTL as to claims asserted against DTL within the Lawsuit." (*Id.*)

II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Mutli-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In reviewing the record, a court "must view the facts in the light most favorable

to the nonmoving party and draw all inferences in that party's favor." *Prowell v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weight the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

III

Under Pennsylvania law, "the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Gardner v. State Farm Fire & Gas. Co.*, 544 F.3d 553, 557 (3d Cir. 2008) (quoting *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)); *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) ("The interpretation of an insurance contract is a question of law"). "When the language of the policy is clear and unambiguous, we must give effect to that language." *Baumhammers*, 938 A.2d at 290. If the language of the policy is ambiguous, the policy must be construed against the insurer. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999).

The Evanses seek indemnification from State Farm based on State Farm's alleged duty to defend and indemnify DTL in the underlying litigation. The duty to defend is broader than the duty to indemnify, *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999), and that duty is assessed by comparing the underlying complaint to the insurance policy. *See Gene's Rest., Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 246–47 (Pa. 1988). Factual allegations in the complaint are taken as true and liberally construed in favor of the insured. *Frog*, 193 F.3d at 746 (citing

4

*Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)). The duty to defend arises if "the allegations in the complaint…could potentially fall within the coverage of the policy." *Air Prods. & Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 179 (3d Cir. 1994). In assessing that duty, the Court focuses on the factual allegations contained in the complaint, rather than the causes of action. *See Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999); *see also Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, No. 15-6509, 2017 WL 345636, at *1–2 (E.D. Pa. Jan. 23, 2017) (analyzing factual assertions in original complaint and amended joinder complaint). "Because an insurer's duty to defend it's insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016).

To determine whether the duty to defend is triggered, the Court must first examine the language of the insurance policy to determine the scope of coverage. *See Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596 (3d Cir. 2009). Next, the Court analyzes the complaint in the underlying litigation to determine if those claims potentially fall within the scope of the Policy's coverage. *See id.*; *see also Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 692 (E.D. Pa. 2012).

A

In *Kvaerner Metals Division of Kvaerner Metals Div. of Kvaerner U.S., Inc., v. Commercial Union Insurance Co.*, 908 A.2d 888 (Pa. 2006), the insured entered into an agreement with the Bethlehem Steel Corporation to design and construct a coke oven battery. 908 A.2d at 891. Bethlehem Steel sued Kvaerner for breach of contract and

5

warranty for the faulty design and construction of the battery.  *Id.*  Kvaerner notified its insurance carrier, but the carrier disclaimed coverage because the policy, like the one at issue here, only covered property damage caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions."  *Id.* at 897.

The Supreme Court held that the alleged damage to Bethlehem Steel's property was caused by the faulty workmanship of Kvaerner, which was not an "occurrence" within the meaning of the policy.  *Id.* at 899.  The court reasoned that an "accident" required a degree of fortuity not covered by faulty workmanship, and that this type of policy does not cover "contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."  *Id.* at 898–99.  Thus, the insurer had no duty to defend Kvaerner against a lawsuit alleging only property damage from poor workmanship.  *Id.* at 900.

The Third Circuit Court of Appeals has interpreted *Kvaerner* and its progeny to stand for the proposition that claims based on faulty workmanship do not constitute an "occurrence," and thus do not trigger an insurer's duty to defend.  *See, e.g.*, *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010); *see also Westfield Ins. Co.*, 856 F. Supp. 2d at 702 ("Under well-established Pennsylvania law, claims of and damage resulting from faulty workmanship do not have a sufficient degree of fortuity'").  Faulty workmanship, "even when cast as a negligence claim," does not constitute an "occurrence."  *Specialty Surfaces*, 609 F.3d at 231; *see also Peerless Ins. Co. v. Brooks Sys. Corp.*, 617 F. Supp. 2d 348, 356 (E.D. Pa. 2008) (finding that failure to follow industry standards alleged faulty workmanship under *Kvaerner*).  Moreover,

6

"damages that are a reasonably foreseeable result of the faulty workmanship are also not covered[.]" *Specialty Surfaces*, 609 F.3d at 238–39.

B

The Court must next compare the terms of the Policy to the allegations in the underlying litigation to determine whether those allegations triggered coverage. *See Nationwide*, 562 F.3d at 595; *see also MMG Ins. Co. v. Floor Assocs., Inc.*, No. 15-4814, 2017 WL 3394619, at *2 (E.D. Pa. Aug. 8, 2017) (considering allegations in complaint and joinder complaint). The Complaint and Joinder Complaint allege that DTL installed an improperly "designed, sized, vented and harmonized HVAC system," and that DTL breached implied warranties, building codes and industry standards for the manner in which the HVAC system was installed. (Joinder Complaint at ¶ 13.) The alleged improper installation forced the Evanses to replace the "defectively designed and installed" HVAC system. (Complaint at ¶ 26.)

The factual allegations in the underlying case mirror those in which courts have refused to find a duty to defend. *See, e.g.*, *MMG Ins. Co.*, 2017 WL 3394619 at *1 (finding faulty workmanship where subcontractor improperly installed carpeting and flooring in condominiums); *State Farm Fire & Cas. Co. v. Moreco Const., Inc.*, 171 F. Supp. 3d 373, 376 (E.D. Pa. 2016) (finding subcontractor's failure to place tarp over roof installation was faulty workmanship); *Roman Mosaic & Tile Co. v. Liberty Mut. Ins. Co.*, No. 1106994, 2012 WL 1138587, at *1 (E.D. Pa. Apr. 5, 2012) (finding subcontractor's building and installation of faulty shower pans and drains was faulty workmanship). Irrespective of whether the claims are couched as negligence or breach of warranty, the underlying litigation concerned DTL's faulty workmanship. Moreover,

7

the only allegation of property damage relevant to the HVAC system involved the removal and replacement of that system.  *Kvaerner* made clear that the risk intended to be insured against is the possibility of damage "to property *other than to the completed work itself*[.]  *Kvaerner*, 908 A.2d at 899 n.10 (emphasis added); *see also Specialty Surfaces*, 609 F.3d 23839 (finding no duty to defend where property damage was an "entirely foreseeable, if not predictable" result of faulty workmanship).  The claims asserted against DTL in the underlying litigation did not trigger State Farm's duty to defend because DTL's alleged faulty workmanship was not an "occurrence" under the Policy.  Because State Farm did not have a duty to defend DTL, the Evanses are not entitled to indemnification from State Farm.  *See Ramara*, 814 F.3d at 673.

      The Evanses cite two cases which found that claims involving faulty workmanship could potentially constitute "occurrences."  In *Schuylkill Stone Corp v. State Auto Mut. Ins. Co*, 735 F. Supp. 2d 150 (D.N.J. 2010), the court held that a subcontractor was entitled to defense and indemnification for claims arising from the defective design and construction of residential homes.  The court found that the claims constituted an "occurrence" because, among other reasons, the plaintiffs asserted claims for bodily injury.  *Id.* at 158.  In *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683 (E.D. Pa. 2012), however, the court held that the negligent construction of residential homes was not an "occurrence" because "Pennsylvania law explicitly declines to recognize this type of claim as accidental in nature," and that *Schuylkill Stone* was distinguishable because it involved claims for bodily injury.  *Id.* at *15.  Here, as in *Westfield Ins. Co.*, all of the claims in the underlying litigation concern DTL's alleged faulty workmanship and the "foreseeable consequences of that

8

workmanship"—replacing the HVAC system. *Id.* at * 14–15; *see also Roman Mosaic & Tile Co.*, 2012 WL 1138587 at *6.

The Evanses also cite *Nat'l Fire Ins. Co. of Hartford v. Robinson Fans Holdings, Inc.*, No. 10-1054, 2011 WL 1327435, at *1 (W.D. Pa. Apr. 7, 2011), which involved claims against an industrial fan designer and manufacturer over a fan that failed due to design defects. *Id.* The court concluded that the claims were an "occurrence" within the meaning of the insurance policy because they involved "a product that actively malfunction[ed], which could give rise to an 'accident[.]'" *Id.* at *3. In the underlying litigation here, the claims brought against DTL were based solely upon the faulty design and installation of the HVAC system; not that the HVAC system actively malfunctioned. *See Quality Stone Veneer, Inc.*, 229 F. Supp. 3d at 362 (finding claims against stone veneer installer and manufacturer were not an "occurrence" because no allegation resembled a product-liability claim or alleged that the product actively malfunctioned); *see also Acuity, A Mut. Ins. Co. v. Knisely & Sons, Inc.*, No. 15-76, 2016 WL 4223757, at *4 (W.D. Pa. Aug. 9, 2016) ("Nothing in the underlying pleading suggests that the boiler's failure to perform was the result of an accident, active malfunction, or other fortuitous event.").[2]

IV

State Farm also moves for summary judgment on the thirteen counterclaims asserted by the Evanses.[3] State Farm argues that twelve of them fall outside the scope

---

[2]  In Counts Two through Five, State Farm asserts other policy exclusions, which the Court need not consider.

[3]  Those counterclaims include: (1) insurance nullification by litigation; (2) misrepresentation or concealment of facts; (3) deceit; (4) bad faith and breach of covenant of good faith and fair dealing; (5) breach of contract; (6) reformation; (7) unjust enrichment; (8) breach of fiduciary duty; (9) failure

9

of the Assignment from DTL to the Evanses, and that the remaining bad faith claim is meritless. (Mot. at 9.) An assignment is "a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee." *Legal Capital, LLC v. Med. Prof'l Liab. Catastrophe Loss Fund*, 750 A.2d 299, 302 (Pa. 2000) (quoting *Horbal v. Moxham Nat. Bank*, 697 A.2d 577, 583 (Pa. 1997)); *see also Sprint Commc'ns Co. LP v. APCC Servs., Inc.*, 554 U.S. 269, 290 (2008) ("[T]he [assignor] assigned to the [plaintiffs] 'rights, title and interest' in claims based on those injuries. Thus, in the litigation before us, the [plaintiffs] assert what are, due to that transfer, *legal rights of their own*."). This means that "the assignee is usually the real party in interest and an action on the assignment must be prosecuted in his name." *Wilcox v. Register*, 207 A.2d 817, 820 (Pa. 1965).; *see also Am. Soc. for Testing & Materials v. Corrpro Companies, Inc.*, 292 F. Supp. 2d 713, 718 (E.D. Pa. 2003).

Assignments will "ordinarily be construed in accordance with the rules of construction governing contracts and the circumstances surrounding the execution of the assignment document." *Horbal*, 697 A.2d at 583 (citing *U.S. National Bank v. Campbell*, 47 A.2d 697 (Pa. 1946)). "[W]hen interpreting a contract, Pennsylvania courts look to the words of the agreement in order to determine the parties' intent." *State Farm Mut. Auto Ins. Co. v. Coviello*, 233 F.3d 710, 717 (3d Cir. 2000). Again, under Pennsylvania law, the Court is required to give effect to the clear and unambiguous language of a contract. *See Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).

---

to warn; (10) breach of implied warranty of fitness for intended purposes; (11) implied warranty of merchantability; (12) breach of the warranty of suitability; and (13) breach of express warranty of fitness for a particular purpose. (Resp. at 12-28.)

A

All of the counterclaims other than that alleging bad faith fall outside the scope of the Assignment, and the Evanses thereby lack standing to assert them. The plain language of the Assignment states that the Evanses may pursue against State Farm "any and all insurance defense and/or indemnification declaratory judgment claims, as well as any and all bad faith claims that may apply…." (Assignment at ¶ 1.) This language unambiguously expresses an intent to limit the Assignment to the right to pursue the specifically enumerated claims. Because the Evanses were not assigned the right to pursue anything other than claims for defense, indemnification and bad faith, they do not have standing as "the real party in interest." Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."); *see also Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc.*, 198 F.3d 415 (3d Cir. 1999) (affirming grant of summary judgment where assignor completely assigned rights, and thus did not have standing as the real party in interest under Fed. R. Civ. P. 17).

B

The only counterclaim the Evanses have standing to bring is that State Farm acted in bad faith by refusing to defend or indemnify DTL. (Resp. at ¶ 145.) Pennsylvania's bad faith statute, 42 Pa C.S.A. § 8371, provides in relevant part:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

11

42 Pa. C.S.A. § 8371.

Pennsylvania federal and state courts have defined "bad faith" as "[a] frivolous or unfounded refusal to pay proceeds of a policy." *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); *Atiyeh v. Nat'l Fire Ins. Co.*, 742 F. Supp. 2d 591, 598 (E.D. Pa. 2010). "[B]ad faith claims cannot survive a determination that there was no duty to defend, because the court's determination that there was no potential coverage means that the insurer had good cause to refuse to defend." *Frog*, 193 F.3d at 750 n.9. "It follows that an insurer with no duty to defend or indemnify its insured could not have acted in bad faith in violation of § 8371." *Pizzini v. Am. Int'l Specialty Lines Ins. Co.*, 249 F. Supp. 2d 569, 570–71 (E.D. Pa. 2003), *aff'd*, 107 F. App'x 226 (3d Cir. 2004); *see also Lucker Mfg. v. Home Ins. Co.*, 23 F. 3d 808, 821 n.19 (3d Cir. 1994). State Farm did not have a duty to defend or indemnify DTL for their faulty workmanship, and thus did not act in bad faith under § 8371.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.